Good morning. This is the time and place set for argument in the case of Galaza v. Wolf. Counsel for Appellant, please approach and proceed. Good morning, Your Honors, and may it please the Court. My name is Jenny Foley. I represent the Plaintiff Appellant, Anna Galaza, in this matter. I know that you've all read the briefs very carefully. Before I start, are there any questions that you'd like me to address? Why don't you just start and then we'll weigh in if something comes to mind that we need to flesh out. Excellent. I'd like to reserve five minutes of my time for rebuttal if I may. Please be reminded that the time showing is the total time remaining for your argument. Yes, ma'am. Thank you. Congress has evidenced a clear intent to employ and keep employed disabled persons. Unlike many other forms of discrimination, Congress has seen fit to create two legislative schemes to ensure that disabled persons are given full and free access to the workforce. And within that, and particularly within the Rehabilitation Act, Congress has indicated that the federal government needs to be the leader in setting the example for other employers to maintain and create jobs for disabled persons. Counsel, you said there are two legislative schemes. The Rehab Act is one. What's the other in your view? The Americans with Disabilities Act. Within the ATSA, TSA's reliance on notwithstanding language is misplaced. It is using notwithstanding as an absolute grant of power to do what they want with their employees is inappropriate. Congress never meant for the TSA to have unfettered power in this regard. The ATSA's reliance on using differing physical standards for the various types of screeners indicates that Congress was aware and acknowledged that differing types of screeners and differing employees would necessarily have differing physical abilities. Counsel, I found it a little unclear in the briefing whether you agree that your client was a security screener. That was her position with the TSA. She was a security screener. However, the differing physical standards account for the fact that there are differing physical abilities. Notably, the ATSA does not say that all screeners must meet all of the physical requirements all of the time, and none of the physical requirements is listed to be as without accommodation. A lot of the other circuits have looked at this. Are you asking us to essentially disagree with all of them? Yes. Why should we create a circuit split on this point? What is so persuasive that we should create a circuit split? The initial analysis performed on the language of the statute was incorrect as a matter of law to start with. Secondly, the whistleblower… How is it incorrect as a matter of law? Because it did not take into account Congress's intent not to discriminate. Counsel, we don't consider or try to divine Congress's intent when we can interpret a statute on its plain language. Exactly, and the plain language of the statute does not say that the accommodations, excuse me, that the physical requirements must be met without accommodation. If Congress had meant that to apply… But the statute says, notwithstanding any other provision of law, the administrator of the TSA shall have authority, etc., including setting minimal physical standards. And there is precedent, including from the Supreme Court, that says that phrasing means that Congress intended to preempt other statutory provisions. And hence, our sister circuits have interpreted that language to mean that Congress intended to preempt the Rehabilitation Act. And you're saying we should look to something beyond the statute to decide that that was incorrect? I'm saying that the plain language of the statute does not require a reading that puts two statutes in conflict. The Supreme Court has also said that where statutes can be read in harmony, they should be. And if you look at the plain language of the ATSA, there is no provision that says these physical requirements must be met without accommodation. If Congress had meant that, they would have said so. The ATSA and the Rehabilitation Act can be read in harmony. But isn't what they said is that the administrator of the TSA has the authority to decide those standards? And if the TSA had adopted provisions for accommodation, then that would be the law. But they haven't. Again, they haven't adopted those because they are relying on the notwithstanding language to create conflict between two statutes that don't have to be read as being in conflict. But why aren't they entitled to rely on that language? The language empowers them to promulgate the regulations, correct? Respectfully, we disagree. We believe that the language gives them broad authority. There's no doubt about that. That made sense in light of how the ATSA arose during the attacks of September 11. However, by reading in that conflict, it has created an issue where the TSA is discriminating against disabled employees. That is not actually in the statute. Simply because there's a grant of power doesn't mean that the power is absolute or unconstrained by other laws. Even if it says notwithstanding any of the laws, that's the difficulty I think you have in this case, is that if there were not the notwithstanding language, you might have a more potent argument. But it specifically says notwithstanding any other law. So doesn't that complicate your argument? It does complicate the argument to some extent. However, again, Congress is very capable and has in other places said certain physical requirements must be met without accommodation. Physical standards for the military, physical standards for FBI agents, for CIA agents. Those things say they have to be met without accommodation. If they meant that, they would have said that. Certainly they would have added that language at some point in the 20-plus years. In addition, the Whistleblower Protection Act passed in 2012, which was analyzed in conjunction with the ATSA by the Ruedas case in 2020, outlines that Congress intended for TSA agents to have more protections than they had been. The first thing we have to do is decide that we're going to reach that issue. Because as I read the briefing below and the record, that was not raised before the district court. It seems to be a new argument you're offering to us now. It is new, and we suggest that it would be appropriate for you to consider because it arises out of new case law. 2020 was the first time that any court looked at the two statutes side by side and compared what amounts to competing notwithstanding language. An unpublished district court decision from Florida, outside our circuit, that has not been cited for this proposition by any other case. That is the basis on which we should decide that there's a change in the law. I would suggest that looking at the analysis contained in that decision, regardless of the fact that it is, in fact, outside the circuit, it is unpublished, but looking at the analysis contained therein and the side-by-side comparison of the competing notwithstanding language reveals that when you look at the two statutes side by side, that there is notwithstanding language in both statutes. The Whistleblower Protection Act also makes clear in the Senate report that enacted the act that Congress intended that TSA agents be given the full protections of ordinary civil servants as they are with everything else. Does that mean you can bring a Rehabilitation Act claim in the district court, or does that mean there might be some other claim that's available to someone like your client through the administrative process that the CSRA creates? Both. In the case of mixed cases where you have one of the enumerated employment actions under the jurisdiction of the Merit Systems Board and a discrimination case, an employee may properly bring their claim either through the Merit Systems Board, if they choose to do so, or they may bring that claim through the EEOC. And there is case law supporting that, as well as the statute makes that clear, that they're not strictly limited to the Merit Systems Board protections. They also have the protections of the EEOC. Well, this now seems somewhat outside even the briefing on appeal, but wouldn't the WPEA suggest that you can bring this kind of claim in the district court, that it essentially overrides the notwithstanding language that Judge Beatty and Judge Rollinson had already been discussing with you? So when you look through the Whistleblower Protection Act, it says that the employees notwithstanding any other provision of law shall be covered by the provisions of Section 2302B1, 8, and 9. And if you look at Section A2 of 2304, it says that any provision of law implementing Section 2302B1, 8, and 9, and the important part is, by providing any right or remedy available to an employee or applicant for employment in the civil service. So that references back to the provisions within the Rehabilitation Act, within the broader civil service, that allows an employee to pursue a mixed case, either through the Merit Systems Board, as some will do, or through the EEO processes, as Ms. Galazza did, as Mr. Roedis did. And there is a case that we cite in our brief, I believe it's Daniel's, talking about it's very clear that employees with mixed cases can either go through the Merit Systems Board or through the EEO process. Does this, I mean, even assuming you're right about all this, does this even apply to your client, given that the events in question predated the WPEA? We would suggest that the passage of the WPEA evidences congressional intent to bring TSA agents into line with normal civil servants, who have all of the protections, and even if it doesn't directly change, because it was after my client was terminated, but before her case arose, then we would suggest that it's strongly persuasive evidence that her case should be allowed to proceed on the theory that the protections that were granted were inadequate, as evidenced by later amendments and later acts passed by Congress. We don't usually say something's retroactive to past conduct without some indication in the statute that that's what Congress was trying to do. I don't really see that in this statute. The statute does not say that it is retroactive. That is true. However, even if it does not strictly apply, again, we suggest that it is strongly persuasive evidence that the protections granted to TSA agents in claims of disability were woefully inadequate, and that it should be strongly persuasive that Ms. Galaza's case should be allowed to continue. Her case began in 2016, and we've been up and down. It's been pending since then. One of the questions that comes up in addressing cases that sort of fall in the middle is what happens if there's a floodgate, right? We don't want to overwhelm the agency with claims. And I would submit that because the agency has already tacitly admitted that it must comply with Rehabilitation Act protections, there would not be the flood of litigation that arises when you have questions like that. What's your basis for saying that the agency has tacitly implied that they must comply with the Rehabilitation Act? Their management directive outlines specifically issues pertaining to the Rehabilitation Act and how those claims are to be handled within the agency. And as I recall, that document includes some prefatory language that states that it doesn't have the force of law. It does not have the force of law. That is correct. However, the fact that the agency is already complying means that there is a tacit admission that they need to comply, that they should be complying, and this court should rule that they have to comply. What's the date of the management directive? 2020? It's later, isn't it? The policy was effective January 25th of 2016. The handbook was published initially March 24th of 2010, and the most recent revision that I could find was September 3rd, 2018. All right, Kelsey, you want to reserve some time for rebuttal? I do, if I may reserve the rest of my time. Yes. May it please the Court, Counsel. Good morning, Your Honors. My name is Holly Vance. I am here on behalf of the government. Eight circuit courts agree with the government's position here. None, to my knowledge, have rejected the government's position. They simply have not decided the issue yet. And the reason for that, Your Honors, is the language in the ATSA is crystal clear. I don't want to derail you, but I do want to just get to the WPEA, find out your position on that. So how does this all work in your view? Could the plaintiff here have pursued a claim under the CSRA, and does that mean she cannot pursue one here under the Rehabilitation Act in the District of Nevada? Well, first of all, the CSRA covered what she did do. It's very broad. She could not have pursued, Your Honor, a claim under the WPEA. It wasn't in effect when she was discharged. And so at the time of her discharge, Your Honor, the ATSA foreclosed all disability discrimination. So that's the retroactivity issue. Correct. Okay, so let's put that to the side. Let's put the forfeiture issue to the side as to whether this was properly raised in the district court. If somebody like the plaintiff were just to come up today, what can she do under the CSRA? Under the CSRA, and you're talking about the WPEA? Yeah, the WPEA. So first order of business would be to go to the Office of Special Counsel. The language that I've quoted for you in the brief says that the Office of Special Counsel shall investigate prohibited personnel practices. Because let me back up for a moment here. The WPEA 2304 refers you to 2302, which is the provision addressing prohibited personnel practices. So what an individual who would like to pursue a WPEA challenge today would do would follow the steps for administrative review to challenge a prohibited personnel practice. And the first step in that process is to go before the Office of Special Counsel, which, again, didn't happen here. So that's how it would work. And then you go through, depending on the arguments you make, there are many twists and turns, but I think it goes from Office of Special Counsel and then to MSPB. So that is the path. And then from there, what? Your opposing counsel was suggesting that this could be essentially a mixed case where it could then be brought somehow outside of that process or within that process. Is that true? Well, again, hers wasn't a mixed case, but if someone were to bring a mixed case, again, I would say if you're following the path to challenge a prohibited personnel practice, you start with the OSC and then go to MSB. And what happens after that? Is that decision final, or can the agreed person take the decision to court? What happens after the decision is made at the board? My understanding, I mean, based on the Sloan case, you can go to the EEOC with the idea that you're going to appeal to the MSB, or you can go to the MSB.  you can go to court. Which court? Well, it depends. There are a number of scenarios that take you to federal circuit, and then there are some that take you to district court. And I apologize. I don't have them all memorized, but the point I want to make, though, is her discharge predated all of this, so none of this was available to her. But that's my understanding. The typical path, I think, would be OSC, MSBB, and then in most circumstances, the federal circuit. But in reading some of this on occasion, you can go to district court depending on what you argue. So are you suggesting that a person in this position would not have the option of following two paths simultaneously, going to the Merit System Protection Board and also filing in district court, or immediately going to the district court? I think there may be language in there that, well, you have to exhaust before you can get to the district court, so no, I don't think those would be simultaneous procedures. Your point is once you exhaust, there may be two different federal court avenues for you depending on the nature of your claims. That gets into a very complicated area of law about these mixed cases, but at the very least, what you're telling us is you have to go through the agency process and the MSPB before you even get to that? Correct. That's my understanding reading everything. The title suggests that these claims are in some way related to whistleblowers who would then suffer adverse employment consequences. Can a person who is not a purported whistleblower also pursue these claims? I believe so because if you look at the language, and again, 2304 refers you to 230B, which is prohibited personnel practices. If under the WPA you want to challenge a prohibited personnel practice, you can go through that process, all those steps that I just outlined. I don't see anything that would limit it to a whistleblower. In fact, my recollection is there's language in there that says whistleblowers and some other kinds of actions are being implemented here, which is the process to challenge a prohibited personnel practice. Counsel, in your view, can the Whistleblower Act and the ATSA coexist? Does the ATSA preclude any disability claim under the Whistleblower Act? I think they can coexist, Your Honor. That is a principle of statutory interpretation. We try to get two provisions to coexist. That is consistent with my position. I'm saying that you can pursue ATSA bars screeners from seeking disability discrimination claims in federal court. However, with the enactment of the WPEA, the legislature has carved out a very narrow exception that would allow not only just a screener but any TSA employee to pursue a prohibited personnel practice. I don't view them as inconsistent. Would that include the claim that Ms. Galaza made? If the Whistleblower Protection Act were in place, could she as a screener use that to challenge what she thought was disability discrimination? She could, but, again, you've got to follow the very narrow channels that I've outlined. You're conceding that the notwithstanding language does not preclude a claim under the Whistleblower Act for disability claims from screeners? You can pursue that narrow administrative path, yes. That is permissible as I see it, but it doesn't get you a rehabilitation act in district court. That is something different. I know that Section 203 references the Rehabilitation Act, and I know counsel has said, well, there you go, it's authorizing a Rehabilitation Act claim. Actually, I respectfully disagree with that. I think what that language is saying is that a handicapping condition is going to be defined in the same manner as it is in the Rehabilitation Act. I don't see the quoted language, and let me pull it up here for you. Here it is. This is 2302. An employee who has the authority to take any personnel action shall not discriminate on the basis of a handicapping condition as prohibited under 501 of the Rehabilitation Act. So, you know, again, I think the Florida court and I think counsel has taken the position, well, there you go, it references the Rehabilitation Act, so we get to file that claim. First of all, it doesn't say that. And second, I think what they're getting at there is on the basis of handicapping condition will be defined as it is in the Rehabilitation Act. Another reason why I think my argument is correct that you don't get a Rehabilitation Act claim... Are the remedies different? Pardon me? Are the remedies different? So here she's tried to come straight to the district court under the Rehabilitation Act. Now you're saying, well, a future Ms. Galazza could go through this WPEA, CSARA administrative process, eventually get to a federal court, subject to the protections of the Rehabilitation Act but under the guise of the civil service regime, not a true Rehabilitation Act. But are the remedies different? You know, I'm not entirely clear. I think so, because I think it would be whatever falls within the parameters of these administrative steps that you take. And I apologize, I don't know everything about that. I do find that the CSRA provisions that we've addressed, I mean, there are many twists and turns and a lot of things depend on the arguments you make. But my guess is that the remedies are different. We know that our position is the ATSA bars both the substantive and remedial provisions of the Rehabilitation Act. I mean, that's real clear. Well, that's why I asked you the question about whether or not the ATSA and the Whistleblower Protection Act could coexist. Because if the disability is defined as in the Rehabilitation Act, then I think you're conceding that the Rehabilitation Act provisions survive. No, I mean, they're different. I just think a Rehabilitation Act claim in federal district court is different from a challenge of a prohibited personnel practice that goes through all those steps. I mean, I just think they're different. But the disability is defined as in the Rehabilitation Act. That is my understanding based on that language. So I don't think that language gives you a Rehabilitation Act claim, but I think it defines it. Not a claim under the Rehabilitation Act. Right. But something similar to that under the Whistleblower Protection Act. Well, again, the WPEA gives a narrow remedy. What is that narrow remedy? I think that's what the problem is because you say that the remedy is narrow, but you concede that the disability determination is predicated on the language in the Rehabilitation Act. So that's why I'm having some trouble grappling with your argument that it's a narrow remedy because it's linked to the language in the Rehabilitation Act. Well, again, I mean, none of this applies to counsel. But, Your Honor, my understanding of the MSPB, OSC, going up that chain, I think there are a number of non-monetary options that are available to any litigant that goes through those channels, and I think those are far more abundant than what you get if you go directly to court with a Rehabilitation Act claim. And I guess maybe one of the reasons why Congress carved out the narrow piece here with the WPEA, narrow administrative review, is maybe they recognize, hey, here's some other options for a litigant that might be on the table. And maybe going through the administrative channel of the WPEA provides a tribunal fact finder with greater expertise on this. I mean, maybe that's why they may be available. I get it, but no attorney's fees, no damages. Right, right. I get it. But the point I want to make is they are different. They are different. One other point I want to make while I'm thinking about it, counsel has used the term discrimination. I want to emphasize for the court, you know, the ATSA was enacted to protect people, to make airline travel safer, a matter of safety and security. So there is no intent by the TSA here to discriminate. And I would point you to the complaint where the TSA didn't have to do this, but it did according to the complaint. It offered her an exit lane monitor position. It offered her a ticket checker position. It offered her a bypass door monitor position. If the goal is to discriminate and, you know, discharge people, the TSA certainly wouldn't have worked with her and given her those positions if its intent was to discriminate. So, in other words, you know, it didn't have to do that. The ATSA said you don't have to accommodate, but the agency did. So I want to make that point. And then another thing, I think when you look at the ATSA, sometimes it appears to be very draconian, right, at first blush. But here's the point to keep in mind. You know, if a TSA security screener cannot perform the physical requirements of the job, he or she is welcome to go to another position within either the TSA or the broader Department of Homeland Security and get a non-security job. So, you know, again, I want to just sort of debunk this notion that anyone is discriminating here. I just don't think that's the case, and I'm out of time. Thank you so much. I appreciate it. Are there any questions? All right, thank you, Counsel. Rebuttal? Counsel, could you start with addressing the last point that opposing counsel made about the offers that were made to your client that she did not accept? Do you agree? No, I don't. She did accept an exit lane checker position. She was in the position for a year and a half, and then she was summarily terminated without any additional proof of additional medical documentation, which the TSA required at that time, because allegedly she could not meet the physical requirements of the job that she was doing. That is incorrect, and that is clear from the record below. Can I just switch gears, if I may? On the WPEA, so your client did not exhaust administrative remedies. Is your position that she just wasn't required to? No, she did exhaust her administrative remedies by going through the EEOC, and the case law is clear, as well as when you – and we're happy to provide additional briefing if the court would like. When you trace the statute back, it is very clear that an employee who has a mixed case can pursue their claim either through the Merit Systems Board, and if they don't like that decision, then they must go to the federal circuit, or with a mixed case, they can proceed through the EEOC, and if they don't like the decision at the EEOC level, then they can proceed into the district courts. How was this a mixed case? She both had a termination as a result of her disability, which arguably could have put her into the Merit Systems Board provisions because they cover removals from service, and she had a claim for disability discrimination. But she wasn't exhausting her remedies under the WPA, which didn't exist, right? Those weren't relevant to her at that point. Correct. The WPA does not in and of itself require any particular form of exhaustion, just that they exhaust one of the available administrative remedies. And to clarify that, the WPA itself says quite clearly that any provision of law implementing Section 2302, those subsections, by providing any right or remedy available to an employee or applicant for employment in the civil service. So the WPA doesn't require anything different for whistleblowers or anyone else. It simply says you've got to go through these normal processes. Counsel, what's your best case authority for the proposition that two iterations of a disability claim is a mixed case? I'm not sure I understand your question. So you said, when I asked you why this was a mixed case, you said there was a disability claim, and then there was something. You said it was a disability. Because she was removed from service. Due to disability. Termination due to disability and disability discrimination. Those are two iterations of a disability claim. Generally, when there's a mixed claim, there's a Section 1983 claim and a discrimination claim, or some other claim as opposed to what the actual core claim is. There's something else to that. And I don't see that here. Well, typically when you have a claim like this, typically it will go through the EEOC process. However, because there was a removal, and removals technically fall within the Merit Systems Board, she would have had the option of doing one or the other. She chose to go through the EEOC, as most applicants will do. But she could have done either, but wasn't required to do either or. Did that answer your question? That answers the question. Any other questions? All right, counsel, if you could wrap up. I just want to point out that the security concerns raised by the TSA are noble and valid, and there is no reason that within the Rehabilitation Act, which requires an individualized process, an analysis of what a particular employee with a disabling condition can and can't do in terms of their job, that process still maintains the safety requirements that we expect of the TSA. It still keeps us safe, and it avoids disability discrimination. All right, thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the Court. We are adjourned. Thank you. All rise. This court for this session stands adjourned. Thank you.
judges: RAWLINSON, BADE, BRESS